# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-IA-01307-SCT

*PRESTAGE FARMS, INC., A NON-RESIDENT CORPORATION; JAMES E. BLISSARD, d/b/a J & J BLISSARD FARM; BOBBY BROOKS, d/b/a BOBBY BROOKS SWINE; RICHARD MOORE, d/b/a RICHARD MOORE SWINE FARM; JERRY MILNER d/b/a JERRY MILNER SWINE; GONE HOGWILD, INC., A MISSISSIPPI CORPORATION; PIG PALACE, INC., A MISSISSIPPI CORPARATION; AND PIGS TO HOGS, INC., A MISSISSIPPI CORPORATION*

*v.*

*JIM NORMAN AND BARBARA NORMAN; LARRY BENNETT AND PEGGY BENNETT; CHESTER BRASSFIELD AND ROBBIE BRASSFIELD; JOHNNY BUFORD; W. C. CARNATHAN AND MABLE CARNATHAN; GWEN CHRESTMAN; RUBY CHRESTMAN; AMANDA COCKRELL; JOE COLBERT AND PATRICIA COLBERT; WARREN COLBERT AND STACY COLBERT; SENORA COUSIN AND OLIVIA COUSIN; CHARLES FUNDERBURK AND CAROLYN FUNDERBURK; KENNETH HARDIN AND GLORIA HARDIN; WILLIAM E. HILL AND PAM HILL; L. C. HOLOMAN; BURRELL HOOPER; TONY HOOPER AND REGINA HOOPER; JAMES IVY; BRYAN K. JERNIGAN; ANN L. LUCIUS; DAVID LUCIUS; BILLY KING AND PEGGY SUE KING; TENA McCARTY; JOHN A. McCLENDON, JR. AND PAMELA McCLENDON; BARRY MARTIN; TERRY L. MARTIN; THOMAS O. MARTIN AND RUTH MARTIN; WAYNE EARL MUNLIN AND DOVIE MUNLIN; LENASTRA MURRY; GEORGE R. NORMAN AND CHARLOTTE A. NORMAN; GEORGE ORR; LAURA G. PARKER; JAMISON PEDEN AND LAURA PEDEN; LUCIUS PREWETT AND MARGARET PREWETT; LOY V. REEVES AND LAVANDA REEVES; BOBBY G. SMITH AND BETTY JEAN SMITH; LUTHER W. TERRY; RUTHIE J. THOMAS; HILDA C. THOMPSON; TERRY TUNNELL AND ANGIE TUNNELL; JOYCE B. VANCE; BURELL WHITT AND HAZEL WHITT; DANNY WHITT; JEWEL F. HARRISON AND EDITH HARRISON; AND JIMMY L. KIRKWOOD AND GERTRUDE L. KIRKWOOD*

| DATE OF JUDGMENT: | 6/27/2000 |
| TRIAL JUDGE: | HON. DENNIS M. BAKER |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN ERNEST WADE, JR. |
| | TRUDY D. FISHER |
| | GAYE NELL LOTT CURRIE |
| ATTORNEYS FOR APPELLEES: | WILLIAM H. LISTON, JR. |
| | DANNY E. CUPIT |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED AND REMANDED - 4/11/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/2/2002 |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. The plaintiffs filed their joint complaint and request for a bill of peace in the Chancery Court of Montgomery County, Mississippi, on January 4, 2000, against Prestage Farms, Inc. (Prestage), and seven of its contract hog growers (the defendant farmers) alleging (1) the creation, establishment, and maintenance of public nuisances consisting of nine large commercial hog confinement facilities containing hundreds of hogs for the purpose of feeding, growing, and raising hogs belonging to Prestage for sale by Prestage, (2) the creation of private nuisances, and (3) the intentional infliction of emotional distress. Plaintiffs seek damages and injunctive relief.

¶2. Each of the defendants filed separate answers to the complaint, all of which are substantially the same and all of which assert identical affirmative defenses incorporating common issues of fact and law.

¶3. On March 2, 2000, defendants filed a joint motion to sever parties under M.R.C.P. 21 raising the issue of joinder of plaintiffs and defendants under M.R.C.P. 20(a). After a hearing, the chancellor entered an order on June 27, 2000, denying the defendants' motion to sever.

¶4. On July 13, 2000, the defendants filed a motion for certification and interlocutory appeal and stay of trial court proceedings. The chancellor denied that motion on July 28, 2000. The defendants then filed their petition for interlocutory appeal and petition to stay proceedings with the clerk of this Court, which was granted on December 13, 2000.

¶5. The defendants raise the following issues on appeal:

> **I. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION BY DENYING THE M.R.C.P. RULE 21 MOTION TO SEVER.**

> **II. WHETHER USE OF AN EQUITABLE BILL OF PEACE FOR THE JOINDER OF PARTIES IS PROPER IN THIS CASE.**

¶6. Plaintiffs raise the following issues on cross-appeal:

> **III. WHETHER INTERLOCUTORY APPEAL IN THIS CASE WAS IMPROVIDENTLY GRANTED.**
>
> **IV. WHETHER THE DEFENDANTS' RAISING OF THE ISSUE OF IMPROPER VENUE FOR THE FIRST TIME ON APPEAL SHOULD BE DISREGARDED AND STRICKEN SINCE THE ISSUE WAS NOT RAISED IN THE LOWER COURT IN THE MOTION TO SEVER.**

## FACTS

¶7. Plaintiffs allege that Prestage designed, established, set up, and operated the seven farms at issue. After the establishment and construction of each facility, Prestage provided hogs to each of its growers for the purpose of raising the hogs for marketing by Prestage. Prestage specified the facilities to be used, the manner of construction, and set the methods and procedures to be carried out by the growers in raising the hogs for market.

¶8. Each of the facilities contains one or more buildings or barns where large numbers of hogs are periodically brought by Prestage. The hogs are kept in constant confinement in these barns where they are fed specially mixed and formulated diets specified by Prestage, which permits their rapid and intense growth over a limited period of time until they become large enough for sale to a slaughter house. During their confinement, these hogs discharge vast amounts of bodily waste and excrement that falls through slats in the flooring of the hog barns into a holding area under the flooring. The buildings are aerated through large ventilation fans which draw the air out of the barns and into the open atmosphere while fresh air is pumped into the buildings. Periodically, the liquid and solid waste from the hogs is flushed or drained by gravity from under the barns through pipes to a nearby anaerobic open sewer lagoon where anaerobic bacteria living in the lagoon digest the solids in the waste, leaving liquid to be pumped out and sprayed into the open air and onto nearby fields, purportedly as fertilizer.

¶9. Plaintiffs assert that the creation, establishment and operation of each farm owned by Prestage and the defendant farmers constitutes public and private nuisances because the plaintiffs have suffered loss of their use and enjoyment of their property. The plaintiffs also allege that the actions of Prestage and the defendant farmers constitute intentional infliction of emotional distress.

## LEGAL ANALYSIS

### I. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION BY DENYING THE M.R.C.P. RULE 21 MOTION TO SEVER.

¶10. The defendant farmers argue that plaintiffs in this case are improperly joined and that the trial court abused its discretion in denying defendants' motion to sever. Plaintiffs argue that the trial court did not err and that its ruling falls under the exercise of sound discretion.

¶11. The standard of review applicable to a trial court's ruling based on the exercise of sound discretion is abuse of discretion. *American Bankers Ins. Co. v. Alexander*, 2001 WL 83952, at *4 (Miss. 2001); *Bobby Kitchens Inc., v. Mississippi Ins. Guar. Ass'n*, 560 So.2d 129, 135 (Miss. 1989). When the

standard of review is abuse of discretion, this Court must first determine if the court applied the correct legal standard and, if so, the trial court's determination will be affirmed unless it committed a clear error of judgment. *Wood v. Biloxi Pub. Sch. Dist.*, 757 So.2d 190, 192 (Miss. 2000). When the question of abuse of discretion arises, this Court will not reverse the trial court unless it is shown that prejudice resulted to the complaining party by the ruling. *Lamar Hardwood Co. v. Case*, 143 Miss. 277, 107 So. 868,871 (1926). Courts are given "broad discretion" to determine when and how claims are tried under M.R.C.P. 20 and 42. *First Investors Corp. v. Rayner*, 738 So.2d 228, 238 (Miss. 1999). An appellate court cannot substitute its own view for the findings of a trial court regarding joinder. *American Bankers*, 2001 WL 83952, at *4 (citing *Bobby Kitchens, Inc.,* 560 So.2d 129).

¶12. M.R.C.P. 20 provides that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief. . . . arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action. . . . " As pointed out in *American Bankers,* 2001 WL 83952, at *2 the official comment to Rule 20 defines its intent as:

> The general philosophy of the joinder provisions of these Rules is to allow virtually unlimited joinder at the pleading stage but to give the Court discretion to shape the trial to the necessities of the particular case.

M.R.C.P. 20 cmt.

¶13. Here, the plaintiffs' claims arise out of an alleged private nuisance. A private nuisance is an interference with the use and enjoyment of land. *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So.2d 648, 662 (Miss. 1995). The defendant farmers argue that *Lambert v. Matthews*, 757 So.2d 1066 (Miss. Ct. App. 2000), is dispositive of this issue. *Lambert* quotes *Alfred Jacobshagen Co. v. Dockery*, 243 Miss. 511, 517, 139 So.2d 632, 634 (1962) as follows: "Each [nuisance] case must be decided upon its own peculiar facts, taking into consideration the location and the surrounding circumstances." *Lambert*, 757 So.2d at 1069. Joinder was not the issue before the Court in either *Lambert* or *Jacobshagen* and is not considered by this Court to be precedent as to the issue of joinder. We must next discuss whether the requirements of Rule 20 have been met in this case.

### A. Same transaction or occurrence.

¶14. The defendants cite *Demboski v. CSX Transp. Inc.,* 157 F.R.D. 28 (S.D. Miss. 1994) in support of their assertion that plaintiffs' claims do not arise from the same transaction or occurrence. In *Demboski*, the court held that three wrongful death claims and one personal injury claim arising out of four separate crossing accidents could not be joined. However, the court opined as follows, "[i]n ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued." *Id.* at 28 (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir.1974). The *Demboski* court further reasoned that

> Although the Plaintiffs cite several cases wherein courts have found plaintiffs' rights to relief arose from one transaction or occurrence or a series of transactions or occurrences, this Court finds that the cases relied upon by the Plaintiffs differ from the case at hand. Most of the cases cited by the Plaintiffs involved allegations of discrimination and misrepresentations where the facts alleged by each plaintiff were inextricably interwoven together to show a common pattern of discrimination or misrepresentation.

*Id.* at 29.

¶15. Relying upon *Demboski*, we must review this case on its own facts. In doing so, we find that there is a common pattern of behavior among the various defendants which satisfies the requirements of Rule 20.

¶16. Our finding is strengthened by *American Bankers,* 2001 WL 83952. In that case, approximately 1371 borrowers brought action against a secured lender and collateral protection insurer to recover for overcharging premiums in connection with a scheme to defraud the borrowers. This Court held that joinder was proper under Rule 20, finding that the plaintiffs' claims arose "out of the same pattern of conduct, the same type of insurance, and involve interpretation of the same master policy." *Id.* at \*5.

¶17. Plaintiffs in this case allege that Prestage Farms, acting in concert with each of its contract growers, established and operated identical public and private nuisances which caused harm to each plaintiff and their property. We find that this case involves essentially the same situation as the *American Bankers* case and that the plaintiffs' claims arise out of the same series of transactions or occurrences.

> B. *Common questions of law or fact.*

¶18. Due to the fact that Fed.R.Civ.P. 20 also requires plaintiffs' claims to arise out of the same transaction or occurrence or series of transactions or occurrences and contains common questions of law or fact, *American Bankers* analyzed the liberal approach the federal courts use to determine if joinder is proper.

> . . . . under the federal rule, if the transaction and occurrence test cannot be met, there is always a possibility that the cases can be consolidated solely on the existence of common issues. When reviewing common questions of law or fact, the existence of only a single common issue of law, or a single common issue of fact will support joinder.

*American Bankers,* 2001 WL 83952, at \*4 (Citing 7 Wright, Miller & Kane, *Federal Practice & Procedure: Civil 2nd* § 1653 (1986)).

¶19. In *American Bankers*, the defendants argued that because the plaintiffs' claims related to more than 1,371 independent loan transactions, each claim involved facts and circumstances unique to each plaintiff. But this Court noted that the cases contained at least twenty-two common issues of fact and law which applied to "each and every plaintiff." *Id*. at \*5. Here, the defendants assert nineteen of the same defenses and the plaintiffs all present the same issues of fact. There is no question that common questions of law and fact are present in this case.

¶20. Lastly, the defendants argue that they will be prejudiced by the joinder of the various plaintiffs and rely on *Grayson v. K-Mart Corp*., 849 F. Supp. 785, 791 (N.D.Ga. 1994) and *Greene v. Mobil Oil Corp*., 188 F.R.D. 430 (E.D. Tex. 1999)(holding that joinder of many plaintiffs with differing types and amounts of damages would prejudice the defendants in the eyes of the jury). The defendants in *American Bankers* also relied on *Grayson*. In rejecting defendants' arguments, this Court stated,

> In *Grayson*, eleven plaintiffs filed an age discrimination suit against their employer. *Grayson v. K-Mart Corp*., 849 F.Supp. 785, 791 (N.D.Ga.1994). A joint trial of plaintiffs' claims would have involved eleven different factual situations, eleven sets of work histories, eleven sets of witnesses and testimony, and the laws of four different states. Id. at 791. The case at bar stands in stark contrast to the factual situations in *Grayson*. Here, each plaintiff has alleged the very same claims involving the

same insurance policies. As such, the prejudice and confusion contemplated by the defendant is not sufficient to warrant separate trials. At the very least, any prejudice or confusion can be remedied by a carefully drafted jury instruction.

*American Bankers,* 2001 WL 83952, at *4. Plaintiffs in this case have also alleged the same claims involving the same pattern of conduct of Prestage and its contract growers. As this Court found in *American Bankers,* we again hold that joinder under Rule 20 is proper.

¶21. In sum, we find that the chancellor did not abuse his discretion or make a clear error of judgment in denying the defendants motion to sever because plaintiffs' claims involve many common questions of law and fact and arise out of the same series of occurrences or transactions. Furthermore, whether or not we think the better choice would be to sever the trials is irrelevant because we cannot substitute our own findings for that of the trial court absent an abuse of discretion.

## II. WHETHER USE OF AN EQUITABLE BILL OF PEACE FOR THE JOINDER OF PARTIES IS PROPER IN THIS CASE.

¶22. On direct appeal, the defendants argue that the use of a bill of peace is improper in this case. Plaintiffs defend the use of a bill of peace by arguing that it is necessary to prevent a multiplicity of suits citing *Leaf River Forest Prods., Inc., v. Deakle*, 661 So.2d 188, 192-93 (Miss. 1995) in support of their argument.

¶23. In *Deakle*, several defendants sought a bill of peace to consolidate all of the cases filed against them for the purposes of case management and injunction of further prosecution. The defendants had been sued by 7,000 plaintiffs in separate suits claiming damages arising from pollution of the Leaf River.

¶24. The defendants argue that a bill of peace cannot be used where there are both multiple defendants and multiple plaintiffs. *Deakle* clearly contradicts this argument, "The object of a bill of peace is to obtain protection of equity against the necessity for maintaining or defending numerous actions at common law in order to protect the interests of the parties, where claims of more than one party on at least one side were involved." *Id.* at192 (citing Henry J. McClintock, *McClintock on Equity* § 176, at 480 (2d ed. 1948).

¶25. This Court, in *Deakle*, found that a bill of peace was not proper for procedural reasons, but opined that a bill of peace may be proper in a suit involving a "community of interest" between the parties or common questions of law or fact, the decision of which would, in large part, determine many of the actions. *Id* at 193. *Deakle* further stated that "Where codes or rules of practice, such as the Mississippi Rules of Civil Procedure, provide an adequate remedy, a bill of peace to allow an injunction against numerous actions should be denied." *Id*. at 193. The Court then found that the Mississippi Rules of Civil Procedure did not provide a remedy for defendant's "dilemma" because Mississippi does not provide for class actions, so the bill of peace would have been proper. *Id*. at 193.

¶26. We are facing a very similar situation in this case. As stated by the chancellor in his ruling on the motion to sever:

[T]his is a contractual arrangement, in effect, one person or one entity owning it, determining-the word 'dictating' may be a little harsh, but, really, it's more appropriate-dictating what's done, and, even, handling it; and what's not handled by them is under their supervision and control; it's, in effect, as if everybody is one, and that one is Prestage.

¶27. As we essentially hold under the previous issue, we now hold that a bill of peace is proper in this case because a "community of interest" is present in this case.

### III. WHETHER INTERLOCUTORY APPEAL IN THIS CASE WAS IMPROVIDENTLY GRANTED.

¶28. On cross appeal, plaintiffs argue that Prestage's interlocutory appeal was improperly granted, that the appeal should be dismissed, the stay of proceedings lifted, and this cause remanded to the chancery court for a trial on the merits.

¶29. Plaintiffs have two bases for their argument. One is that *American Bankers* is dispositive of the issue the defendants raise on appeal. The other basis is that a motion to sever under M.R.C.P. 21 is within the sound discretion of the trial court and cannot be the basis for an interlocutory appeal.

   *a. American Bankers*

¶30. While we do find that this case is similar to *American Bankers* and that joinder is proper under Rule 20, it cannot be said that *American Bankers* is dispositive of the issue. A discussion of the merits of the appeal is necessary.

   *b. Standard of review of decisions denying motions for severance.*

¶31. The plaintiffs also argue that a motion to sever under M.R.A.P. 21 is within the sound discretion of the trial court and cannot be the basis for an interlocutory appeal. M.R.A.P. 5(a) requires that petitioner show that a substantial basis exists for a difference of opinion on a question of law in order to obtain an interlocutory appeal. Plaintiffs argue that this interlocutory appeal does not meet that threshold requirement and that issues involving the discretion of the trial court are not appropriate for interlocutory appeal. *American Elec. v. Singarayar*, 530 So.2d 1319, 1322 (Miss. 1988).

¶32. In response, the defendants argue that while the Court in *Singarayar* did acknowledge that matters involving discretion of the lower court are less likely to be granted appellate review, the Court did not hold that such discretionary matters are not appealable. *Singarayar*, 530 So.2d at 1322.

¶33. This Court previously considered and rejected plaintiffs' argument when plaintiffs filed a response to the petition for interlocutory appeal objecting to the appeal. We again find this argument to be without merit.

### IV. WHETHER THE DEFENDANTS' RAISING OF THE ISSUE OF IMPROPER VENUE FOR THE FIRST TIME ON APPEAL SHOULD BE DISREGARDED AND STRICKEN SINCE THE ISSUE WAS NOT RAISED IN THE LOWER COURT IN THE MOTION TO SEVER.

¶34. The defendants argue that in the event that this Court severs the plaintiffs' actions, venue in Montgomery County would only be proper as to four of the plaintiffs and one of the defendants. This is due to the fact that only one of the eight defendants in this action has property located in Montgomery County and he is only being sued by four plaintiffs. The defendants ask that, if this Court should decide to sever the actions, the rules of venue be applied.

¶35. In response, the plaintiffs argue that the issue of venue is procedurally barred because it is being

introduced for the first time on appeal.

¶36. We find that this issue is moot due to the fact that we are affirming the chancellor's decision to deny defendants' motion to sever.

## CONCLUSION

¶37. Plaintiffs' claims are properly joined under Rule 20, and, for the same reasons, a bill of peace is also proper in this case. Interlocutory appeal was not improvidently granted, and the issue of whether venue would be proper if the motion to sever were granted is moot. Therefore, the order of the Montgomery County Chancery Court denying the defendants' Motion to Sever is affirmed, and this case is remanded to that court for further proceedings consistent with this opinion.

¶38. **AFFIRMED AND REMANDED.**

> **PITTMAN, C.J., McRAE, P.J., EASLEY AND GRAVES, JJ., CONCUR. SMITH, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER AND COBB, JJ. CARLSON, J., NOT PARTICIPATING.**

> **SMITH, PRESIDING JUSTICE, CONCURRING IN PART, AND DISSENTING IN PART:**

¶39. I agree with the majority that the present interlocutory appeal was properly granted. However, I disagree with the majority's conclusions that the motion to sever was properly denied and that the equitable bill of peace was properly utilized in this case. For these reasons, I respectfully dissent.

> *A. Motion to Sever*

¶40. In my view, the chancellor abused his discretion by denying the defendants' motion to sever. M.R.C.P. 20 provides that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief ... arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these person will arise in the action...."

¶41. This Court has stated that a same transaction or occurrence means that the cases have a common nucleus of facts. *Kiddy v. Lipscomb*, 628 So. 2d 1355, 1357 (Miss. 1993). The majority bases its determination that this requirement is met on the finding that "there is a common pattern of behavior among the various defendants" as Prestage Farms "acting in concert with each of its contract growers, established and operated identical public and private nuisances which caused harm to each plaintiff and their property." The majority likens the claims before us to those in *American Bankers Ins. Co. v. Alexander*, 2001 WL 83952 (Miss. 2001).

¶42. The majority ignores the fact that this case involves all the peculiarities of an action for nuisance. Nuisance actions are intensely fact driven. Inherent in determining the existence of a nuisance is an examination of the individual components of the alleged nuisance and the surrounding area. We have explained that the requisite determination that a use is unreasonable requires a review of *all* the circumstances. *Reed v. Cook Constr. Co.*, 336 So. 2d 724, 725 (Miss. 1976). We have recognized that each case is to be decided on its own facts, taking into consideration the location and the surrounding

circumstances. *Alfred Jacobshagen Co. v. Dockery*, 243 Miss. 511, 517, 139 So. 2d 632, 634 (1962).

¶43. This action involves sixty-eight plaintiffs alleging they have incurred damages as a result of one of **seven separate and distinct nuisances**. The many factors at issue at trial will likely include the size of the farms, the number of hogs present, the length of time the farms have been in existence, the condition of the farms, the operation of the farms and the odor levels emanating from them. Each plaintiff's claim will vary depending on their proximity to the farm, the duration of each plaintiff's exposure to odor and pollutants, the level of exposure, weather conditions and topography, the number of other livestock present in the vicinity, and the plaintiff's prior medical history. Each of these factors is highly plaintiff-specific.

¶44. Also, there is a tremendous danger in cases such as that at hand that one or two plaintiff's unique circumstances could bias the jury against defendants generally, thus prejudicing all defendants with respect to the other plaintiffs' claims. *See also* ***Greene v. Mobil Oil Corp.***, 188 F.R.D. 430, 432 (E.D.Tex. 1999) (cautioning against consolidating cases similar to that at bar). In ***Vicksburg Chem. Co. v. Thornell***, 355 So. 2d 299 (Miss. 1978), this Court addressed an action involving claims for air pollution filed against a single defendant. Five claims were consolidated for trial, and the jury returned five identical verdicts. *Id.* at 300. This Court held that the trial court did not abuse its discretion in consolidating the cases *as they each had a common defendant*. *Id.* The Court went on, however, to reverse the verdicts and remand for a new trial on damages. *Id.* The Court stated that the identical verdicts evidenced confusion on the part of the jury brought on by the fact that the five cases involved different family situations, the five plaintiffs lived varying distances from the defendant's plant, and some plaintiffs were inconvenienced at times more than others. *Id.* at 301.

¶45. *American Bankers*, relied upon by the majority, is clearly distinguishable from the case sub judice. Crucial to the Court's determination in ***American Bankers*** was its finding that each plaintiff alleged the same claims involving interpretation of the same master insurance policy and that the decision as to what coverage would be placed on Fidelity's customers was not made on a case-by-case basis. ***American Bankers***, 2001 WL 83952, at *3. For this reason, the prejudice and confusion contemplated by the defendants was insufficient to warrant separate trials. *Id.* Also significant is the fact that ***American Bankers*** involved 1371 plaintiffs. Of concern to the Court was the practical reality that to require each claim to be brought separately would clog the dockets "with an unmanageable morass of litigation." *Id.* at *3.

¶46. Unlike ***American Bankers***, which involved a single contract between the plaintiffs and a single lender and insurer, the case at bar involves seven hog farms at different locations, operated under different conditions and circumstances, in different localities. The plaintiffs in ***American Bankers*** argued that American Bankers' treatment of the plaintiffs was not unique other than the amount of the premiums charged. *Id.* at *3. Here, as discussed previously, our case law requires that the determination of whether each farm constitutes a nuisance be made on a case-by-case basis. Furthermore, the Court's concern in ***American Bankers*** of the multiplicity of suits if joinder were not allowed does not exist here. The defendants do not seek to sever the plaintiffs' claims into sixty-eight individual lawsuits, but, rather, seek to sever the actions against the seven farms.

¶47. In my view, the requirements of Rule 20 are not met in the instant case, and even more troubling, there exists a high likelihood of confusion of the issues and prejudice to the defendants. The majority significantly errs concerning this issue. For these reasons, I would reverse chancellor's denial of the defendants' motion

to sever.

## B. Bill of Peace

¶48. The majority concludes that the plaintiff properly relied on a bill of peace to join their claims because there exists a "community of interest" in Prestage's arrangement with its hog farms. In my view, the equitable bill of peace is an improper vehicle for joinder of the parties in this case.

¶49. The majority relies on *Leaf River Forest Prods., Inc. v. Deakle*, 661 So. 2d 188 (Miss. 1995). *Deakle* involved numerous causes of action stemming from one common source - the defendant's alleged contamination of Leaf River. In the case at bar, the plaintiffs' claims arise out of seven different sources. The plaintiffs have improperly lumped together separate and distinct claims in one package.

¶50. *Tribette v. Illinois Cent. R. Co.*, 70 Miss. 182, 12 So. 32 (1892), is instructive here. In that case, a number of property owners, by separate actions, sought to recover from the railroad damages for losses inflicted upon their various properties by a fire alleged to have resulted from the negligence of the railroad. The railroad sought to have the chancery court enjoin the separate suits and join all of the claims as one suit in order to avoid multiple actions. In denying the bill of peace, this Court stated:

> Where each of several parties may proceed in equity separately, they are permitted to unite and make common cause against a common adversary, and one may implead in one suit in equity many who are his adversaries in a matter common to all in many cases, but never when the only ground of relief sought is that the adversaries are numerous, and the suits are for that not in itself, a matter for equity cognizance.... "Two or more owners of mills propelled by water are interested in preventing an obstruction above that shall interfere with the down flow of the water, and may unite to restrain it or abate it as a nuisance; but they cannot hence unite in an action for damages, for, as to the injury suffered, there is no community of interest."

*Id.* at 32, 34 (quoting Bliss Code on Pleading, section 76). The Court explained, "It is not enough that there is a community of interest merely in the question of law or of fact involved..." *Id.* at 33. Rather, there must be a common right or title involved or a common purpose for which equity may be pursued. *Id.*

¶51. Likewise, in *Newell v. Illinois Cent. R. Co.*, 106 Miss. 182, 63 So. 351 (1913), the defendant railroad filed a bill of peace in chancery court praying for an injunction against the prosecution of numerous and separate suits filed by passengers for injuries sustained. *Id.* at 351. The Court stated:

> [N]either the chancery court, nor any other court, has jurisdiction of this sort of suit. The plaintiffs in the original suits could not have joined their causes of action in one suit, and the defendant cannot accomplish this result by the procedure here adopted, or by any other procedure known to the law.

*Id.*

¶52. In a more recent case, *Evans v. Progressive Cas. Ins. Co.* 300 So. 2d 149 (Miss. 1974), the Court addressed a bill of peace sought by four plaintiffs who alleged that three defendant corporations conspired to charge usurious interest when financing premiums on policies. *Id.* at 150-51. This Court noted that clearly absent was the ingredient of a well-defined community of interest in questions of law and fact. *Id.* at 152. The Court explained:

Each appellant ... has associated with him a different set of facts and circumstances. Treating the matter as a class suit would confront the trial court with as many different sets of facts as there were members of the class. Such a procedure would require the chancellor to make separate fact findings and calculations because each of the alleged class members was a policyholder with a separate contract of insurance and related financing.... Such an agglomeration of unrelated claims against common defendants does not constitute a community of interest even though similar legal questions may be associated with each of the alleged claims.

*Id.* at 152.

¶53. The fact that each of the seven farms named in this suit is connected to Prestage is clearly insufficient to establish the requisite community of interest contemplated by the controlling precedent opinions of this Court.

¶54. For these reasons, I respectfully dissent.

**WALLER, AND COBB, JJ., JOIN THIS OPINION.**